**Ruth A. (Narofsky) RICH**

v.

**Randell L. NAROFSKY.**

Supreme Judicial Court of Maine.

Submitted on Briefs March 16, 1993.
Decided May 17, 1993.

Peter K. Mason, Searsport, for plaintiff.

Arthur J. Keenan, Packard & Keenan, Newport, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

DANA, Justice.

Defendant Randell Narofsky appeals from a judgment entered in the Superior Court (Waldo County, *MacInnes, A.R.J.*) affirming an amended divorce judgment entered in the District Court (Belfast, *Staples, J.*). Because the District Court abused its discretion in amending the divorce judgment to relieve Narofsky's former spouse of her support obligation to her minor children, we vacate the judgment and remand for further proceedings.

Ruth (Narofsky) Rich and Randell Narofsky were divorced pursuant to a divorce judgment entered in the District Court, that provided for shared parental rights and responsibilities with respect to their two daughters, then aged five and seven. At that time, Rich's annual gross income was approximately $11,500 and Narofsky's was $12,200. Although Rich was designated the primary residential care provider, Narofsky was not ordered to pay child support because the parties were obligated to share child-related expenses equally and because their contact with the children was equal and rotated on a weekly basis.

Within days of the divorce, Rich left her job to become a full-time student at the University of Maine. Rich and the children moved to Orono where she enrolled them in the Orono school system. Narofsky then filed a motion to amend the divorce judgment and for contempt, alleging that Rich had violated the divorce judgment by removing the children from the Belfast school system. Rich responded with her own motion to amend. Following a hearing, the District Court designated Narofsky the primary residential care provider so that the children could continue to reside and attend school in the Belfast area. Rich's contact with her children was limited to every other weekend and a portion of

school vacations. With the exception of reimbursing Narofsky for one-half the cost of the premiums for the children's health insurance, the court relieved Rich of any child support obligation, imposing it entirely on Narofsky. The Superior Court affirmed and this appeal followed.

Under Maine's child support guidelines, gross income is defined to include "income from any ongoing source including ... educational grants, fellowships or subsidies that are available for personal living expenses." 19 M.R.S.A. § 311(5)(A) (Supp. 1992). The court found that Rich's only income consisted of an $11,000 Pell grant, of which $3,500 was "available for personal living expenses." The court relieved Rich of any obligation under the guidelines because the amount for which she would be liable was considered "negligible."

■■■ Narofsky contends that the court erred in calculating Rich's support obligations based on her present income rather than her earning capacity. We agree. Under the guidelines, the court is vested with discretion to base a child support award on a party's earning capacity rather than the party's present income, 19 M.R.S.A. § 311(5)(D) (Supp.1992),[1] and the court's determination will not be disturbed absent an abuse of that discretion. *Hebert v. Hebert,* 475 A.2d 422, 425 (Me.1984). Rich testified that her class day began at 10:00 a.m. and ended at 2:30 p.m., that she had previously worked both a full-time and a part-time job simultaneously, that she could handle a part-time job together with her studies but presently saw no need to, and that she would have the summer off from school and could work then.[2] On these facts, it was an abuse of discretion to set Rich's support obligation without some consideration of her part-time and summer earning capacity. *Cf. Moore v. Moore,* 586 A.2d

1235, 1237 (Me.1991) (trial court's failure to undertake appropriate review of all factors involved in computing parties' income in deciding motion for increased child support warranted remand).

■■■ Narofsky further contends that the court failed to give appropriate consideration to Rich's equity interest in the former marital residence, then on the market, in determining her support obligation. Under the guidelines, gross income includes:

> income from any ongoing source including, but not limited to, salaries, wages, commissions, royalties, bonuses, dividends, severance pay, pensions, interest, trust funds, annuities, capital gains, social security benefits, disability insurance benefits, prizes, workers' compensation benefits, spousal support actually received pursuant to a preexisting order, and educational grants, fellowships or subsidies that are available for personal living expenses.

19 M.R.S.A. § 311(5)(A). Home equity appears nowhere in this list. Although a capital gain is income, that income is only realized when an asset is sold. *Cf. Eisner v. Macomber,* 252 U.S. 189, 207, 40 S.Ct. 189, 193, 64 L.Ed. 521 (1918) (for tax purposes, income is not the growth in the value of an investment, but rather the gain realized from the disposition of that investment). Because Rich's interest in the marital residence will generate a capital gain, if at all, only when the residence is sold, the court acted appropriately in not equating home equity with a potential capital gain.

The entry is:

Judgment vacated.

Remanded to the Superior Court with instructions to vacate the judgment of the District Court, and remand to the District

---

1. 19 M.R.S.A. § 311(5)(D) (Supp.1992) provides in pertinent part:

   Gross income may include the difference between the amount a party is earning and that party's earning capacity when the party voluntarily becomes or remains unemployed or underemployed, if sufficient evidence is introduced concerning a party's current earning capacity.

2. In contrast, Narofsky, with whom the children were living at the time of the hearing, testified that their day started at 5:30 a.m., that they would leave for the babysitter's at 6:00 a.m., that he worked from 7:00 to 4:00, and that he would pick his daughters up at the babysitters at 4:30 p.m. and return home for the evening. Narofsky worked 40 hours a week at $6.22 per hour and paid the babysitter $50 per week.

Court for further proceedings consistent with the opinion herein.

GLASSMAN, COLLINS and RUDMAN, JJ., concurring.

CLIFFORD, Justice, with whom WATHEN, C.J. and ROBERTS, J., join, dissenting.

I respectfully dissent. The decision of the trial court in the area of child support is entitled to great deference. *Hebert v. Hebert,* 475 A.2d 422, 425 (Me.1984). Under the child support guidelines, the trial court can consider the earning capacity as opposed to the present income of one of the parties when that party voluntarily becomes or remains unemployed or underemployed. 19 M.R.S.A. § 311(5)(D) (Supp. 1992).[3] Consideration of earning capacity as opposed to present income is not *mandatory,* however. Section 311(5)(D) provides that gross income *may* include earning capacity, if the party voluntarily becomes unemployed. This language is in keeping with the broad discretion vested in the court on the application of, and deviation from, the child support guidelines.

*See LeBlanc v. LeBlanc,* 597 A.2d 62, 63–64 (Me.1991).

Had Rich stopped working for the primary purpose of avoiding her child support obligation, then it may have constituted an abuse of discretion for the court not to have considered her earning capacity. *See Smith v. Smith,* 419 A.2d 1035, 1038 (Me. 1980) (voluntary unemployment for primary purpose of reducing alimony does not constitute change in circumstances justifying alimony reduction). Such is not the case here, however. Rich entered college to get a degree to better support herself and her children in the future, not to avoid her support obligations. Consideration of Rich's earning capacity while enrolled as a student, as opposed to her very limited actual income, was not mandated by the child support guidelines. I find no abuse of the trial court's considerable discretion, and I would affirm the judgment.

---

**3.** 19 M.R.S.A. § 311(5)(D) (Supp.1992) provides in pertinent part:

> Gross income *may* include the difference between the amount a party is earning and that party's earning capacity when the party voluntarily becomes or remains unemployed or underemployed, if sufficient evidence is introduced concerning a party's current earning capacity.

(Emphasis added.)